ACCEPTED
04-14-00811-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/19/2015 2:59:24 PM
KEITH HOTTLE
CLERK

No. 04-14-00811-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
10/19/2015 2:59:24 PM
KEITH E. HOTTLE
Clerk

# IN THE FOURTH COURT OF APPEALS
# SAN ANTONIO, TEXAS

## JIM COLEMAN COMPANY

*Appellant*

v.

## RALPH DEAN

*Appellee*

APPEAL FROM CAUSE NO. 11-04-49987-CV
79th DISTRICT COURT, JIM WELLS COUNTY, TEXAS
HON. JUDGE RICHARD C. TERRELL

## APPELLANT'S MOTION FOR REHEARING

Paul R. Lawrence
State Bar No. 12050000
2180 North Loop West, Suite 510
Houston, Texas 77018
(713) 864-8000
(713) 864-0179 (fax)
prlawrence@lbandd.com

*Counsel for Appellant Jim Coleman Company*

1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Jim Coleman Company requests Oral Argument.


TO THE HONORABLE JUSTICES OF SAID COURT OF APPEALS:

COMES NOW, JIM COLEMAN COMPANY, Appellant, in the above named and numbered cause, and respectfully submit this its MOTION FOR REHEARING.

### I.

This case was decided by Opinion issued on September 2, 2015, The Court dealt with the Appeals of Appellant Jim Coleman Company and Appellant Randy Coleman, finding they had similar issues regarding sufficiency of the evidence. It is accurate to say that the issues are similar, but they are distinct.

Appellant Jim Coleman Company requests Rehearing and asks the Court to Reconsider its decision. A deconstruction of the theory of the cased filed, pleaded, tried and appealed will show that the imposition of liability predicated on two accounts prescribed in the DTPA Laundry List is muddled and inappropriate.

Those are strong words but they are accurate. To accuse Jim Coleman Company of causing confusion or causing misunderstanding about the source, sponsorship, approval or certification, when all of the evidence tended to prove

was that the same Jim Coleman Company was a source, sponsor, approver or certifier.*

There are many analogies that come to mind as to how this bends onto itself. It is as though a person says "I promise to pay"; then when unpaid, instead of suing on the promise, there is a claim that the "promise to pay" was a deceptive act because it caused confusion or misunderstanding about whether there was a promise to pay. From the hocus pocus of words, a breach of promise is transferred into a Deceptive Act with the attendant liabilities. In this case, there was a breach of contract cause pleaded, evidence was heard, but it was not submitted – it was abandoned. To contend that Jim Coleman Company caused confusion or misunderstanding when Jim Coleman Company said or implied that it sponsored and approved the concrete housing is pure bootstrapping. It either sponsored or it did not. The cause of action alleges that Jim Coleman Company sponsored the housing (by express or implication), but it did not. A more or less classic oxymoron, but it is wrapped in words that do require analysis.

If all of the evidence demonstrates that Jim Coleman Company, personally

* In lieu of repeating each and all of the words in the statute that relate to source, sponsorship, et seq, Appellant will use "sponsor". Each of the words does have a separate meaning: Approval is not certification. Affiliation is not source. However, in the more general analysis of what Jim Coleman Company did in furthering the belief the concept is applicable.

3

and through agents, did sponsor the concrete housing, it is then incumbent upon Plaintiff to offer evidence to the opposite: that Jim Coleman Company did not sponsor . There is no evidence on that point. If it did sponsor, then Plaintiff has a claim for contractual or guaranty claims, not a DTPA claim.

The questions submitted to the jury, Attached as Exhibit A, read as follows:

**Question 1: Did Jim Coleman Company engage in false, misleading, or deceptive act or practice that Ralph Dean relied on to his detriment and that was a producing cause of damages to Ralph Dean?**

**Question 2: Did the Jim Coleman Company engage in any false, misleading or deceptive act or practice or conduct knowingly?**

As to Question 1, Plaintiff –Appellee contended that Appellant Randy Coleman and others represented that Defendant Living Modular, LLC had the approval and the other qualities set forth in Tex. Bus. & Comm. Code §17.46(b)(2) and (b)(3). Such representations were by word, statements and acts that either expressly so stated or implied such to be true.

In an interesting sense, Appellant Randy Coleman and the others either had 1) the express consent of Jim Coleman Company to represent that, or 2) consent was implied by Jim Coleman Company, or 3)Jim Coleman Company did not know that such representations were made.

4

If each of the possibilities are examined, there is no more than a breach of contract.

As to 3), lack of knowledge if Appellant Jim Coleman Company did not know of the representations, it would have no liability. It would be the classic case of selling the Brooklyn Bridge. How can the Bridge be blamed? People often make untrue representations of product qualities and relationships with others; to the extent that Jim Coleman Company did not know of the representations, it is a victim. The Jury's answer forecloses this as a possibility: i.e., Jim Coleman Company approved of the representation that it was source, sponsor or other as provided in the Act.

As to express or implied consent, if Jim Coleman Company knew that it was being used as a sponsor, it still requires careful consideration of the consequences. If Appellant Jim Coleman Company consented to those representations, and allowed people to represent that it was involved; then the consequence is "Jim Coleman Company is an origin and source, I approve of this product and service and I certify it."

Such statements are not on the Laundry List, such are not Deceptive Trade Practice Acts. They are not deceptive, and there is no evidence that they were false, i.e., that Jim Coleman Company did not approve of the sale of the products, (unless there was evidence that Appellant Jim Coleman Company said it approved

5

knowing at the time the statements were made, that Jim Coleman Company did not really approve).

Appellant Jim Coleman Company either was the origin, source, or it sponsored, approved or certified the home sale or it was not. Further, as to the second act, §17.46(b)(3), Appellant Jim Coleman Company was either affiliated, connected, associated or there was a certification or it was not. There is no evidence, or there is insufficient evidence to conclude that being a source or an affiliate or other enumerated conduct as set out in the Act, was a producing cause of DTPA damages. Clearly, the DTPA did not create a Guarantee for a sponsor, source or approving a party, or for an affiliate, someone connected to the product or service, or that certified the product, service or portion thereof. If a guarantee was meant to be created, it would be there, it would say Guarantee. In fact, in Tex. Bus. & Comm. Code §17.46(b)(2), the statute states there is no extension of warranty created by §17.46. The effect of making such sponsors, approvers, affiliates, would be that no Girl Scout cookies sales people could sell cookies at Kroger's doorways without Kroger "guaranteeing" there would be no loss. There could be no third party sales or services – car washes, cell phones cubicles, watch repair shops or kiosks.

As to Question 2, the definition of knowledge is set forth in the Act (§17.45(a)). The Defendant must possess actual awareness of the "act, practice,

6

condition, defect or failure" giving rise to the claim. We must ask ourselves, of what "act, practice, condition, defect or failure" was the Defendant aware? That Jim Coleman Company was a sponsor, affiliate, source or other listed condition would not be in dispute, that cannot be the knowingly aspect.

On this Question 2, there is no or insufficient evidence. There are no facts alleged or offered that Jim Coleman Company knew that its allowed use of certain premises or assets caused any confusion or that it was or was not a source, sponsor, affiliate, etc. If the use gave rise to a sponsorship or any contract liability, that would be the case to allege and prove.

7

WHEREFORE PREMISES CONSIDERED, Appellant prays that this Motion for Rehearing be granted. Appellant also prays for all such other and further relief to which they may be justly entitled at law or in equity.

RESPECTFULLY SUBMITTED:
LAWRENCE AND BACA, PLLC


_____*/s/ Paul R. Lawrence*_____
Paul R. Lawrence
State Bar No. 12050000
2180 North Loop West, Suite 510
Houston, Texas 77007
Telephone: (713) 864-8000
Fax: (713) 864-0179
prlawrence@lbandd.com
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I, Paul R. Lawrence, in compliance with Texas Rule of Appellate Procedure, hereby certify that a true and correct copy of the foregoing Appellant's Motion for Rehearing was sent to all other parties to the trial court's judgment by facsimile transmission or certified mail on this the 19th day of October, 2015, as listed below:

Charles C. Webb
Webb Cason PC
710 N. Mesquite
Corpus Christi, Texas 78401
Charlie@wcctxlaw.com

Frank Weathered
Dunn Weathered Coffey Rivera & Kasperitis, PC
611 South Upper Broadway
Corpus Christi, Texas 78401
fweathered@swbell.net

Parker Webb
Webb Cason PC
710 N. Mesquite
Corpus Christi, Texas 78401
parker@wcctxlaw.com
J. Michael Guerra
Law Office of J. Michael Guerra
1600 E. Main, Suite 227
P.O. Box 1968
Alice, Texas 78333
Jmguerra14@gmail.com

Living Modular
16221 Koester
Houston, Texas 77040

                                /s/ Paul R. Lawrence
                                Paul R. Lawrence

CAUSE NO. 11-04-49987-CV

| | | |
|---|---|---|
| RALPH DEAN | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| LIVING MODULAR, LLC, | § | 79th JUDICIAL DISTRICT |
| RANDY COLEMAN, AND | § | |
| JIM COLEMAN COMPANY, | § | |

FILED AT .40 O'CLOCK _ . M
R. DAVID GUERRERO
JUN X 3 2014
_____ CO. TEXAS
BY _____ DEPUTY

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions, which have previously been given you. I shall now give you additional instructions, which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

**POSTED**

4.    You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.    You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.    You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible evidence admitted in this case.

Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless otherwise instructed

## II.

You are instructed that the Defendant Jim Coleman Company can only act or fail to perform a required act through the action of an agent, servant or employee of Jim Coleman Company. You are instructed that liability for a corporation cannot be created by any act or failure to perform a required act by any person who is not an agent, servant or employee.

For the Jim Coleman Company to be liable for damages caused by an Agent, Servant or Employee, such action or omission to act must be within the course of the agency or employment of that Agent, Servant or Employee.

## QUESTION 1

Did the Jim Coleman Company engage in any false, misleading, or deceptive act or practice that Ralph Dean relied on to his detriment and that was a producing cause of damages to Ralph Dean?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

(a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(c) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(d) representing that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(e) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;

(f) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Answer "Yes" or "No."

_Yes_

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

Did the Jim Coleman Company in any false, misleading, or deceptive act or practice conduct knowingly?

"Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Ralph Dean.

Answer "Yes" or "No."

Yes

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Ralph Dean for his damages, if any, that resulted from the Jim Coleman Company's false, misleading, or deceptive act or practice?

Consider the following elements of damages, if any.

Net economic loss – The amount Ralph Dean paid for the modular homes and accessories and any out of pocket expenses related to the purchase of the home minus the value of any benefits he received in return.

Answer in dollar and cents for damages, if any.

$ 47,659.38

If you answered "Yes" to QUESTION 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 4

What sum of money, if any, in addition to actual damages, should be awarded to Ralph Dean against the Jim Coleman Company because the Jim Coleman Company's conduct was committed knowingly?

Factors to consider in awarding additional damages, if any, are:

    (a) The nature of the wrong;
    (b) The character of the conduct involved;
    (c) The degree of culpability of the Jim Coleman Company.
    (d) The situation and sensibilities of the parties concerned;
    (e) The extent to which such conduct offends a public sense of justice and propriety.

Answer in dollar and cents for damages, if any.

$ 142,978.14

If you answered "Yes" to QUESTION 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

What is a reasonable fee for the necessary services of Ralph Dean's attorney, stated in dollars and cents?

Answer with an amount for each of the following:

For representation in the trial court

Answer:     $ 26,960

For representation through appeal to the court of appeals

Answer:     $ 15,000

For representation through appeal in the Supreme Court

Answer:     $ 10,000

9.  Do not consider or guess whether any party is covered by insurance unless I tell you to.

10. During the trial, if taking notes will help focus your attention on the evidence, you may take notes using the materials the court has provided. Do not use any personal electronic devices to take notes. If taking notes will distract your attention from the evidence, you should not take notes. Your notes are for your own personal use. They are not evidence. Do not show or read your notes to anyone, including other jurors.

You must leave your notes in the jury room or with the bailiff. The bailiff is instructed not to read your notes and to give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone.

You may take your notes back into the jury room and consult them during deliberations. But keep in mind that your notes are not evidence. When you deliberate, each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes. After you complete your deliberations, the bailiff will collect your notes.

When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

11. I will decide matters of law in this case. It is your duty to listen to and consider the evidence and to determine fact issues that I may submit to you at the end of the trial. After you have heard all the evidence, I will give you instructions to follow as you make your decision. The instructions also will have questions for you to answer. You will not be asked and you should not consider which side will win. Instead, you will need to answer the specific questions I give you.

Every juror must obey my instructions. If you do not follow these instructions, you will be guilty of juror misconduct, and I may have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial.

Do you understand these instructions? If you do not, please tell me now.

Please keep these instructions and review them as we go through this case. If anyone does not follow these instructions, tell me.

Signed _June 2, 2014_

Richard C. Terrell
Judge Presiding